UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC RITTER,

       Plaintiff,

-vs-                             Case No.:

WELLS FARGO BANK, N.A., a foreign
Corporation,

       Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, ERIC RITTER, sues the Defendant, WELLS FARGO BANK, N.A., and alleges as follows:

## **JURISDICTION AND VENUE**

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 as this case presents a federal question, and pursuant to 28 U.S.C. § 1367 for pendant state law claims.

2.      Plaintiff brings this action to recover damages for Defendant's acts in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq*., (hereafter "TCPA") and the Florida Consumer Collection Practices Act, sections 559.55, *et seq*., Florida Statutes (hereafter "FCCPA").

3.      The alleged violations described herein occurred in Hernando County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## PARTIES

4.     Plaintiff ERIC RITTER is a natural person over the age of eighteen (18), who resides in Spring Hill, Hernando County, Florida.

5.     Plaintiff is a debtor and/or alleged debtor as that term is defined by section 559.55(2), Florida Statutes.

6.     Plaintiff is the "called party" with respect to the calls placed to his cellular telephone number, (917) 855-4234, as further described herein. See Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 643 (7th Cir. 2012); Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265, 1266, 1267 Communications Reg. (P & F) 934, (11th Cir.2014).

7.     Defendant WELLS FARGO BANK, N.A. (hereafter "WELLS FARGO") is a foreign corporation with its primary place of business at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104, doing business in Florida through its registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.Upon information and belief, WELLS FARGO services its mortgage loans through its division WELLS FARGO HOME MORTGAGE.

## FACTUAL ALLEGATIONS

8.     At all times material hereto, Defendant WELLS FARGO sought to collect alleged debts from Plaintiff ERIC RITTER that arose from transactions incurred for personal, family or household purposes, and are therefore "consumer debts" as that term is defined by section 559.55(6), Florida Statutes.

9.     At all times material, Defendant WELLS FARGO was the servicer of two separate mortgage loans secured by separate parcels of real property, as more fully described below, which debts are the subject of the unlawful collection activity at issue herein.

2

10.     As described herein, Defendant WELLS FARGO employed business practices resulting in intentional harassment and abuse of the Plaintiff, and engaged in patterns of outrageous, abusive and harassing conduct by and through its agents and representatives in an effort to collect the alleged debts described herein from the Plaintiff.

11.     Defendant WELLS FARGO consents of and has knowledge and control of the collection activities of its agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors for the alleged debt described herein.

12.     On or about August 23, 2006, Plaintiff ERIC RITTER executed and delivered a promissory note to World Savings Bank FSB in the amount of $157,600 and a mortgage securing payment of the Note by a property with a street address of 6423 River Lodge Lane, Weeki Wachee, FL 34607 (hereafter the "River Lodge Mortgage").

13.     In or about December of 2008, WELLS FARGO acquired the servicing rights to the River Lodge Mortgage.

14.     On or about November 3, 2006, Plaintiff ERIC RITTER executed and delivered a promissory note to World Savings Bank FSB in the amount of $191,200 and a mortgage securing payment of the Note by a property with a street address of 111 Waterwood Drive, Yalaha, FL 34797 (hereafter the "Waterwood Mortgage").

15.     In or about December of 2008, WELLS FARGO acquired the servicing rights to the Waterwood Mortgage.

16.     At the time Plaintiff executed the aforementioned Notes and Mortgages, Plaintiff was a self-employed business man running a construction company and a land investment

business. However, subsequent to Plaintiff executing the aforementioned Notes and Mortgages, the economic recession forced Plaintiffs' aforementioned companies out of business.

17.     Furthermore, because of the effect of economic recession on the real estate market, the appraised value of the aforementioned properties fell far below the remaining principal balances on the aforementioned Notes, causing the Notes and Mortgages to be severely "underwater."

18.     Plaintiff applied to WELLS FARGO for modifications of the aforementioned Mortgages, but was denied by WELLS FARGO because Plaintiff was current in his payments.

19.     Plaintiff was advised by WELLS FARGO's representatives that he could not be current in his payments in order to qualify for a mortgage modification, and should therefore discontinue making payments on the subject mortgages.

20.     Following Plaintiff's discontinuance of his mortgage payments, WELLS FARGO nonetheless denied Plaintiff for a mortgage modification.

21.     Instead, in or about August of 2012, Defendant WELLS FARGO, by and through its agents and employees, began its campaign of telephone collection calls to the Plaintiff on his aforementioned cellular telephone number in an attempt to collect the above described mortgage loan debts allegedly owed by Plaintiff, ERIC RITTER.

22.     On numerous occasions, Plaintiff ERIC RITTER answered the Defendant's calls in an attempt to be removed from the call list, and demanded that the Defendant cease placing calls to his cellular telephone number.

23.     However, each of Plaintiff's conversations with the Defendant demanding an end to the telephone harassment were ignored. Defendant proceeded undeterred in its campaign of telephone harassment in an effort to collect the alleged debts.

24.     On or about January 17, 2013, WELLS FARGO, as the purported servicer of the Waterwood Mortgage, filed a Verified Complaint for Foreclosure in in Lake County, Florida, Case No.: 2013-CA-188, thereby initiating foreclosure proceedings against the Plaintiff arising out of the Mortgage on the Waterwood Property.

25.     On or about January 22, 2013, WELLS FARGO, as the purported servicer of the River Lodge Mortgage, filed a Verified Complaint for Foreclosure in Hernando County, Florida, Case No.: 2013-CA-182, thereby initiating foreclosure proceedings against the Plaintiff arising out of the Mortgage on the River Lodge Property.

26.     Following the initiation of the aforementioned foreclosure actions by WELLS FARGO, Plaintiff retained STOPA LAW FIRM as his attorneys with respect to both foreclosure actions, at which point Mr. Stopa appeared on Plaintiff ERIC RITTER's behalf as counsel of record with respect to both of the aforementioned foreclosure actions. Accordingly, Defendant had actual notice that Plaintiff was represented by counsel with respect to the alleged debts at issue.

27.     Furthermore, although Defendant had actual knowledge that Plaintiff was represented by counsel with respect to the alleged debts it sought to collect by virtue of Mr. Stopa's appearance as counsel of record for Plaintiff ERIC RITTER in said foreclosure actions, upon answering Defendant's continuing collection calls, Plaintiff specifically advised Defendant's collection representatives on numerous occasions that he was represented by Mr. Stopa, to contact his attorney directly, and to stop calling his cellular telephone number.

28.     Nevertheless, despite the Defendant's collection representatives being instructed repeatedly by the Plaintiff to cease placing collection calls to his aforementioned cellular telephone, and despite Defendant's actual knowledge that Plaintiff was represented by counsel

with respect to the alleged debts at issue, Defendant proceeded to initiate telephone collection calls to Plaintiff's cellular telephone number in an effort to collect the aforementioned alleged debts.

29.     To date, Defendant WELLS FARGO has placed in excess of three-thousand (3000) calls to Plaintiff on his aforementioned cellular telephone number in an effort to collect the above described alleged debts.

30.     Defendant WELLS FARGO has engaged in conduct in violation of the TCPA and the FCCPA, and constituting intentional harassment and abuse of the Plaintiff, by and through its agents and representatives, on numerous occasions, within the four (4) year period preceding the filing of this action, including but not limited to:

        a.     Continuously and systematically initiating calls to Plaintiff's aforementioned cellular telephone number up to six (6) times per day, and on back to back days through the current date (or such time as will be established after a thorough review of Defendant's records), with such frequency as can reasonably be expected to harass, in an effort to collect the above described debt. In many instances, Defendant would place multiple calls to the Plaintiff's aforementioned telephone number within minutes of each other;

        b.      Calling Plaintiff's aforementioned cellular telephone number from an automated telephone dialing system despite Plaintiff's repeated demands that Defendant cease placing the calls, and despite Defendant's knowledge that Plaintiff was represented by an attorney with respect to the alleged debts that Defendant was calling to collect;

        c.     Calling Plaintiff's aforementioned cellular telephone number from an automated telephone dialing system and leaving pre-recorded messages on Plaintiff's

6

answering machine and voice mail system, identifying Plaintiff and stating that the message was left in "an attempt to collect a debt";

      d.    Calling Plaintiff's aforementioned cellular telephone number, and hanging up either prior to or as soon as the Plaintiff or the Plaintiff's answering machine or voice mail system answered the call;

      e.    Calling Plaintiff from numerous different telephone numbers that appeared on Plaintiff's caller ID as someone or some entity other than Defendant or with no identification;

31.    The telephone calls at issue were placed by Defendant WELLS FARGO using an "automated telephone dialing system" as specified by the TCPA, 47 U.S.C. § 227(a)(1), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers; and/or which has the capacity to dial numbers from a list without human intervention (hereafter "ATDS" or "autodialer").

32.    Defendant WELLS FARGO initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone numbers without the "prior express consent" of Plaintiff, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

33.    Additionally, none of the telephone calls at issue were placed by Defendant WELLS FARGO to Plaintiff's aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

34.    Defendant WELLS FARGO willfully and/or knowingly violated the TCPA with respect to Plaintiff.

35.     Defendant WELLS FARGO has a corporate policy of initiating calls using an automatic telephone dialing system or a pre-recorded or artificial voice message, just as it did when calling the Plaintiff's aforementioned cellular telephone number, as described herein.

36.     Despite actual knowledge of its wrongdoing, Defendant WELLS FARGO continued its campaign of abuse.

37.     Defendant WELLS FARGO's corporate policy provided no means for the Plaintiff to have his aforementioned cellular telephone number removed from the call list.

38.     Defendant WELLS FARGO has a corporate policy to harass and abuse individuals like the Plaintiff despite actual knowledge that the called parties did not provide prior express consent to receive the calls, or had revoked such prior express consent verbally, in writing, or through retention of legal counsel.

39.     Defendant WELLS FARGO followed its corporate policies when attempting to communicate with the Plaintiff in connection with the debt at issue.

40.     Defendant WELLS FARGO has been the recipient of numerous complaints from debtors, alleged debtors, and non-debtors across the country, similar to those alleged in this action by Plaintiff.

41.     Defendant WELLS FARGO is, or should be, in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of calls made to Plaintiff's cellular telephone number over the relevant time period.

42.     As a direct and proximate result of Defendant WELLS FARGO's acts or omissions, as set forth herein, Plaintiffs suffered a heart attack which limited Plaintiff's energy and further limited his earning capabilities.

43.     As a direct and proximate result of Defendant WELLS FARGO's acts or omissions, as set forth herein, Plaintiff has suffered compensatory, statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life.

44.     Plaintiff's statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life pursuant to section 559.77, Florida Statutes, have continued and are continuing as of the filing of this complaint.

45.     All conditions precedent to the filing of this action have occurred or have otherwise been waived.

## COUNT I

## (<u>VIOLATION OF THE TCPA AGAINST WELLS FARGO</u>)

46.     Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs (1) through (39), as if fully set forth herein.

47.     None of the calls at issue were placed by Defendant WELLS FARGO to Plaintiff's aforementioned cellular telephone number with the "prior express consent" of Plaintiff, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

48.     Furthermore, Plaintiff revoked any "prior express consent" Defendant WELLS FARGO had or mistakenly believed it had by:

a.     Verbally requesting that Defendant stop placing calls to his aforementioned cellular telephone number on numerous occasions; and

b.     Notifying Defendant that he was represented by counsel, STOPA LAW FIRM, with respect to the subject debts. <u>See</u> 15 U.S.C. 1692c(a)(2); Fla. Stat. § 559.72(18).

49.     Furthermore, none of the calls at issue were placed by Defendant WELLS FARGO to Plaintiff's aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

50.     Defendant WELLS FARGO willfully and/or knowingly violated the TCPA with respect to Plaintiff by repeatedly placing calls to Plaintiff's cellular telephone number using an ATDS and/or artificial or prerecorded voice without Plaintiff's prior express consent, invitation or permission, after being instructed by the Plaintiff to cease placing such calls, and having actual knowledge that Plaintiff was represented by an attorney, as specifically prohibited by the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

51.     The TCPA provides Plaintiff with a private right of action against Defendant WELLS FARGO for its violations of the TCPA, as described herein, pursuant to 47 U.S.C. § 227(b)(3), and permits both injunctive relief in addition to statutory damages.

WHEREFORE the Plaintiff, ERIC RITTER, respectfully demands judgment against Defendant WELLS FARGO for statutory damages, actual damages, punitive damages, costs, interest, and any other such relief as this Court deems just and proper.

## COUNT II
## (<u>VIOLATION OF THE FCCPA AGAINST WELLS FARGO</u>)

52.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (39), as if fully set forth herein.

53.     At all times material to this action Defendant was and is subject to and must abide by the law of Florida, including section 559.72, Florida Statutes.

54.     Defendant WELLS FARGO engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully communicating with Plaintiff or any member of Plaintiff's family with such frequency as can reasonably be expected to harass the Plaintiff.

55.     Defendant WELLS FARGO engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully engaging in other conduct which can reasonably be expected to abuse or harass the Plaintiff.

56.     Defendant WELLS FARGO engaged in an act or omission prohibited under section 559.72(18), Florida Statutes, by communicating with the Plaintiff in connection with the collection of a debt when Defendant knew Plaintiff was represented by an attorney with respect to the debt and had knowledge of the attorney's name and address.

57.     Defendant WELLS FARGO's actions have directly and proximately resulted in Plaintiff's prior and continuing sustaining of damages as described by section 559.77, Florida Statutes, including, but not limited to: statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life; and attorney fees, interest and costs.

WHEREFORE Plaintiff, ERIC RITTER, respectfully demands judgment against Defendant WELLS FARGO for statutory damages, actual damages, punitive damages, attorneys' fees, costs, interest and such other relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

*s/David P. Mitchell*
David P. Mitchell, Esq.
Florida Bar No.: 067249
Maney & Gordon, P.A.
5402 Hoover Boulevard
Tampa, Florida 33634
Tel: (813) 888-6700
Fax: (813) 888-6708
david@mitchellconsumerlaw.com
d.mitchell@maneygordon.com

v.marrero@maneygordon.com
*Counsel for the Plaintiff*